See Heerman v. Beef Slough Manuf'g. etc., Co. [1 Fed. 145].

## Case No. 14,560.

### UNITED STATES v. BEERMAN.

[5 Cranch, C. C. 412; 2 Liv. Law Mag. 524.] [1]

Circuit Court, District of Columbia. July 27, 1838.

#### LARCENY—JOINT AND SEPARATE PROSECUTIONS—PLEADING.

If the goods of several persons are stolen at the same time, the stealing of each person's goods constitutes a distinct offence, and may be the subject of a distinct and separate indictment; but they may be joined in one indictment: and whether they shall be prosecuted jointly or separately, is properly left to the discretion of the attorney of the United States.

[Cited in U. S. v. Goddard, Case No. 15,220.]
[Disapproved in Hoiles v. United States, 3 McArthur, 370. Cited in brief in State v. Egglesht, 41 Iowa, 577.]

The grand jury found five separate indictments against the defendant [Henry Beerman] for larceny in stealing the goods of five different persons; the property stolen being in each case, of the value of five dollars and upwards. In each indictment the offence was stated to have been committed on the 4th of March, 1838. On the 5th of April, the defendant was found guilty in each case; and on the 21st of April, the court sentenced him to the penitentiary for one year in each case.

THRUSTON, Circuit Judge, concurred in the judgment in the first of the five cases, but dissented in the other four cases; and on the 30th of April, read in court, and directed the clerk with the leave of the court to file the following opinion:

1 [Reported by Hon. William Cranch, Chief Judge. 2 Liv. Law Mag 524, contains only a partial report.]

In this case, the traverser is convicted on five separate indictments, for stealing certain articles of clothing from a boarding-house on Pennsylvania avenue, belonging to sundry boarders in that house. Upon these several indictments the majority of the court sentenced the convict to five years' imprisonment in the penitentiary in this district, to hard labor, &c., in pursuance of the act of congress [4 Stat. 115] in such cases made and provided; that is to say, for one year on each several indictment. I concurred in the first sentence only, and refused to concur in the other four sentences, because, from the evidence on the trial of the several indictments, it seemed to me that although the goods stolen belonged to five different persons, it appeared they were all taken at one and the same time; or, at least, that there was no evidence that they were taken at several times, and not at the same time; and the said five indictments charged the goods to be all taken on the same day.

Now the grounds of my refusal to concur with the court in more than one sentence against the convict, are the following: 1. That the common law of England being adopted by the state of Maryland, and declared in the 3d article of the bill of rights to be the law of Maryland, it is a well established maxim of that law that "Nemo debet bis puniri pro eodem delicto." 2. That the stealing of goods, at one and the same time, belonging to different persons, is but one act of larceny. 3. That the penitentiary law affixes to larceny of money, goods, &c. above the value of $5, the maximum punishment of only three years confinement in the penitentiary. 4. That this court has decided, in the case of U. S. v. —— [unreported], a colored woman, who stole two articles, namely, a coat from one scholar, and another garment from another scholar at Holbrook's school, in Alexandria, and both charged in the same indictment, that the indictment was good, and actually sentenced the woman to the penitentiary for three years upon a conviction on the said indictment. 5. Then, if the goods, stolen at one time, belong to different persons, this court has settled the law, that it is but one offence, and that such indictment, charging the goods stolen to belong to different persons, is good. 6. If so, then, where the goods stolen at one time, belong to different persons, one indictment is sufficient; and if one is sufficient, to harass and oppress the accused with more than one is oppressive and vindictive, and against the maxim above quoted, and against common justice and common sense.

1st. As to the first grounds of reasons for dissenting from the court; the common law as well as the bill of rights of Maryland, and the constitution of the United States, have carefully protected the personal liberty of the citizens, by many provisions, too obvious and familiar to require specification; and the constitution of the United States, moreover, especially protects the citizens against "cruel and unusual punishments," and the common law against a double punishment for the same offence.

2dly. That the stealing of goods, at one and the same time, although the property of different persons, is but one act of larceny, and subjects the offender to but one punishment. To make it a distinct larceny for each owner of the stolen goods, is a mere technical rule, totally repugnant to the words and spirit of the penitentiary act, against common sense and common justice, and against the foregoing maxim of the common law, the bill of rights of Maryland, and the constitution of the United States.

What is an act of larceny? When the larcener contemplates the commission of a theft to the extent of the theft actually committed and proved, no matter how many persons the stolen goods may belong to, it is the consummation of a single intent only; as in the case of ——, tried in this court, and convicted and punished for four separate larcenies, merely because the goods, valued at $20, were the property of four different persons; the case was, he went into a gentleman's house, on the night of a party there, snatched up a bundle of cloaks, hats, &c., and for this he was punished with three years' confinement in the penitentiary, and some time also in the common jail, because one of the articles stolen was under the value of $5; thus receiving four distinct and separate punishments for one act of larceny. It is true he was confined in the penitentiary for only three years, which is the maximum of punishment for one single offence; but the court, with the sense they entertained of the character of the offences, might have sentenced him for nine years to the penitentiary; but even in inflicting the minimum confinement for larceny of three years confinement only, they did not exceed their power, if viewed as one act of larceny only, still the conviction and sentence as for a fourth offence of larceny to the common jail for a certain period (one month, as far as my recollection serves,) did exceed the measure of punishment allowed by law, according to my view of the case, in deeming the stealing of goods in one act and at one time as only a single larceny, no matter how many proprietors there might have been of the goods stolen; but to illustrate further my sense of the distinction between what constitutes a single larceny and many larcenies committed by the same person, I argue in this way: if a thief contemplates stealing certain goods belonging to different persons, and carries his intent into execution, at one and the same time, or at least, by one continuous operation, it is but one offence, and subject to but one punishment. For instance, take the case of the party, the subject of this opinion, the German: he stole sundry articles of clothing from the boarders at —— boarding-house, belonging to different persons, the

whole together to the value of some sixty or seventy dollars. Did he take these articles at one time, or by one continuous operation, and pursuant to one preconceived intent, or at different times, and in pursuance of separate and distinct intents? or, in other words, did he steal from one boarder only, and in pursuance of a preconceived intent to steal from that person only, and then steal from another in execution of another distinct intent conceived after the consummation of the first larceny, and so on with the larcenies committed on all the boarders, with the stealing from whom he was charged? If he stole from all of them with a preconceived intent so to do, at one time, or by one continuous operation, I say, notwithstanding the alleged technical rule above mentioned, it constituted but one larceny; if the second way just mentioned, the acts constituted separate and distinct larcenies. In order to estimate properly the soundness of this doctrine, in contrast with the view taken of the law by the other two judges, let us test them by the penitentiary act, the bill of rights of Maryland, the constitution of the United States, reason, justice, and common sense. The penitentiary act was based upon the principles of apportioning punishments to crimes; of equalizing them, and hence the distinction between larcenies under five dollars' value and those above; and hence the scale graduating punishments to crimes, according to the view congress entertained of their specific enormities. It is true they made no distinction in the punishment of larcenies over the value of five dollars, between the lowest sum above five dollars, and the highest, because such minute distinctions would have overcharged the act with matter not meriting such tedious details; but have left the courts to graduate the punishment in the range submitted to their discretion, between the minimum and the maximum periods of confinement.

How does it comport with this humane and benevolent design of the act, for this court to adjudge that where goods are stolen at one time, or by one continuous operation, and in pursuance of one preconceived intent, from various owners, that because they belonged to various owners merely, it gave them discretion to sentence the larcener to fifteen years' confinement in the penitentiary, for goods stolen not exceeding in value some sixty or seventy dollars, when, if they belonged to one person, and the stolen goods were worth a million of dollars, they could not sentence the convict to more than three years' confinement in the penitentiary? It is no argument to say, we only sentenced the convict on all three indictments, if such had really been the case, to but three years' confinement, and, therefore, the punishment does not exceed the maximum for one act of larceny. It is enough for my argument that they assumed the power to have adjudged the convict to fifteen years' confinement;

but, in fact, in the case of —— there was a fourth conviction under the penitentiary act, where the goods were found by the jury to be under five dollars' value, and for this the convict was sentenced to one month's confinement in the common jail, previous to his transportation to the penitentiary building to undergo his several terms of confinement, thus exceeding, by this last punishment of one month's confinement in the common jail, the maximum of the punishment affixed, by the aforesaid act, to one act of larceny; and thus, in my opinion, going counter to the humane intentions of congress, when they passed the penitentiary act, and the obvious policy of the statute, the object of which was to apportion punishments to crimes, and establish a scale of punishments bearing a nearer relation to, and more commensurate with, the sense entertained by congress of the grades of enormity of criminal offences, than was recognized by, or known to, the common law, whose sanguinary, arbitrary code, has been the subject of reproach and of animadversion by distinguished writers for a long period of time. Thus far, as to the opinion of the two judges being against the policy and spirit of the penitentiary act, I have said it was repugnant to common sense and common justice. As to the first, will any man of common sense say, that by the magic of some senseless, antiquated, technical conceit, an old rule which the human understanding revolts at as silly, irrational, and barbarous, and which, as it is against common right, I deem it in no wise irreverent to impeach, that you can change, as you would change a half eagle into five dollars, one crime into four or five, and thus enable this court to invest themselves with an arbitrary and dangerous power of punishing transgressors to four or five times the extent allowed by law; against not only the letter but the spirit of the law, and in direct contravention of its obvious policy, and the humane intentions of the legislature in enacting the law? That you should have power to punish a citizen, merely because the goods belonged to different persons, with fifteen years' confinement in the penitentiary, where the value of all the goods stolen, taken together, amounted to about sixty or seventy dollars only; nay, even twenty dollars; and yet, if he stole to the value of a million of dollars, the property of one person only, you could not and dare not, inflict over three years' confinement on the convict? Can common sense bear, for one moment, such a construction of the law as this? Of a law, too, founded on and suggested by the very purpose of equalizing punishments with crimes. As to common justice, such a construction is so intuitively against it, that I should deem it a waste of words to attempt to approve or illustrate so self-evident a proposition. I have said, also, that this construction was against the third article of the bill of rights

of Maryland, inasmuch as by adopting the common law they adopted that maxim, that "Nemo debet bis puniri pro eodem delicto;" much less shall he be punished four or five times for the same offence. I have said, also, that it was against the constitution of the United States, protecting the citizens from "cruel punishments;" although the punishment of confinement in the penitentiary be not intrinsically and characteristically a cruel punishment, yet I should deem it very cruel, if you multiply it on the offender to four or five times beyond what the law allows. To these great considerations of violence done to the safeguards provided for the citizens by the constitution of the United States, the common law, the bill of rights of Maryland, the frustration of the humane policy of the penitentiary law, the utter confounding of common sense and common justice often urged by me in support of my opinion against that of the two other judges, I have been met only with the old technical rule, that in spite of the letter and spirit of the penitentiary act, and all those great and weighty objections, the goods stolen, although taken at one time, belong to different persons, and for each person there is, by that old rule, a distinct larceny; as if an old rule, bearing absurdity upon its very face, must overawe and bear down the constitution of the United States, the bill of rights of Maryland, the humane designs and policy of the penitentiary act, together with common sense and common justice; but if the foregoing considerations have no force in them, what reply can be made to this argument?

At the last spring term in Alexandria, a woman (colored) named —— was charged, in the same indictment, with stealing two articles belonging to two boys, as their separate property, namely a coat belonging to one, and another garment from another scholar, at Holbrook's school, both together of the value of nine dollars. The court adjudged the indictment to be good, and actually sentenced the woman to three years' confinement in the penitentiary; thus establishing a precedent, that you may charge goods belonging to different persons in the same indictment, without rendering the indictment bad. If so, what justice or propriety is there in harassing the accused with multiplied indictments; or adopting one rule on one side of the river, another on the other, under the same law? Can it be said that both ways are right? This cannot be, because in one way the court assume a power many times greater than in the other; or many times, e converso, less in one way than the other. But suppose, against all reason, as I think, that they have a discretion to sustain both modes of proceeding, can there be any question which one they ought to adopt, and which to reject? Is it not more congenial with the security of the liberty of the citizen, so carefully guarded by our constitutions of

the United States and of Maryland; with the known humanity of the law, which professes to repudiate vindictive punishments; with that good old maxim of the common law quoted before; with the known policy and humanity of the penitentiary act; with equal justice, to consider the larceny as but one offence, although the goods stolen belong to different persons, according to the Alexandria decision, than as distinct offences, and so punish, under the same law, and for the same offence, one citizen four or five times more than another; harass him with four or five indictments; with paying counsel fees four or five times; occupying the time of the court, so overburdened with business, with four or five trials instead of one; and multiplying the expense to the government four or five times, unnecessarily, and with no public advantage whatever?

But when some of these arguments were urged by me to the other judges, against sustaining and tolerating these multiplied prosecutions for one and the same offence, as I really thought it to be, I was answered, that the traverser was indicted in five separate and distinct indictments; that the court could not judicially see that the said larcenies were committed at one time, or by one continuous operation pursuant to one preconceived intention to commit the said larcenies, or the said larceny. To this, I replied, that from the evidence there was but one intention to commit larceny proved; that in the indictments all the goods stolen were charged to be stolen on the same day, and the law allows of no fractions of a day, unless acts done are proved to have been done on different times on the same day; that so far from this, all the goods stolen were, as far as the evidence went, taken at the same time, or by one continuous operation, and in execution of one preconceived intent to steal all the said goods; if so, it was the duty of the court to quash all the indictments except one; that in the case of the United States v. ——, alluded to above, there was the clearest proof that the accused stole the goods from the entry, not only at one time, but in very quick time, snatching up a parcel of hats, cloaks, &c., and making off, all under his arm, with great speed. Still the court adjudged the transgression to amount technically to separate and distinct larcenies, and the party was convicted on all the indictments, and punished beyond what the law authorized for one act of larceny only. It is not enough to say, we cannot judicially take notice that the various larcenies charged in the several indictments were for goods stolen at one time, or by one continuous operation, and in pursuance of one preconceived intent, and therefore there was but one larceny committed. I deem it my indispensable duty to hearken to the testimony to see that such is the case or not the case; and if it be so to permit but one indictment to be prose-

cuted; every consideration, as regards public justice, justice to the accused, justice to the suitors, justice to the judges themselves, and the unnecessary and useless waste of the public money, demands this duty at our hands.

I will now proceed to define or expound what I believe to be the true characteristics of a single larceny, and of several larcenies committed by the same person; a single larceny consists in stealing at one and the same time, or by one continuous operation, all the goods, no matter to whom belonging, which the thief had a preconceived intention of stealing. Take, for example, the case of the traverser, Beerman, who stole sundry articles of clothing from Beerman's boarding-house, from several boarders living at the same house; did he take the goods at one time, or, by one continuous operation, in pursuance of a preconceived intention to take all the said goods? If so, this, I say, is only one larceny; or did he take part of the goods only at one, time. with intent to take those goods only, and finding his theft successful, he, the next day conceived the intent to take, and did take, the residue, this would be a second and distinct larceny; but according to the opinion of the court in the case of the boy who robbed the entry which was clearly and manifestly done at one time, and quick time, too, the court adjudged that there was a distinct larceny for every article of goods stolen, only because they belonged to different persons, establishing the principle, that where it was evident that the goods were all taken uno flatu, as the lawyers say, at one instant of time, yet that the larcenies are equal, in number, to the number of the owners of the goods. In this case of Beerman, it may be urged against my argument, that Beerman knew, at the time he stole the goods, because he was an inmate in the house, that the goods stolen belonged to different persons, and therefore, in taking them with this knowledge, there was a distinct larceny for each owner of the goods, although the goods were all taken at one time, and pursuant to one intention; but according to the opinion of the two other judges, this knowledge constitutes no part of the grounds of their opinion, inasmuch as in the case of the boy who stole goods from the entry, and of the colored woman in Alexandria, there was no evidence that the thieves knew, nor was there scarcely a possibility that they should have known, who were the owners of the goods, or that there were more than one owner; thus establishing the principle, that if a thief, intending to steal from one person only, happens, unknowingly to take goods belonging to several persons, that he is guilty of as many larcenies as there may be proprietors of the goods stolen: to this doctrine I can never assent, for the reasons given openly in court, at the trial of the parties, and when the court were passing sentence on the convicts,

but which reasons I have expanded and reduced to more form in this written opinion, and which, to defend my own judgment better than I was able to do verbally and on the spur of the occasion, I have very reluctantly, against my wonted practice, set forth in writing, to be filed, if permitted, among the papers in the said indictments.

CRANCH, Chief Judge, on the last day of the term, observed, that as Judge THRUSTON had thought proper to file his reasons for dissenting from the judgment of the court in the case of U. S. v. Beerman, the other judges would reserve the right to file also in vacation their reasons for that judgment; and on the 20th of August, the following opinion was filed by CRANCH, Chief Judge, with the concurrence of MORSELL, Circuit Judge:

On the 30th of April, 1838, Judge THRUSTON filed a written opinion or protest against the sentences of the court upon four of the five indictments against the prisoner for larceny: 1. Because it seemed to him that there was no evidence that the goods were taken from the five several owners thereof at several times, and not at the same time; and the indictments charge the goods, to be all taken on the same day. 2. Because "Nemo debet bis puniri pro eodem delicto." 3. Because the stealing goods, at one and the same time, belonging to different persons, is but one act of larceny. 4. Because the maximum punishment for one larceny, is three years' confinement and labor in the penitentiary. 5. Because this court in Alexandria, decided, as he supposes, in the case of a woman who stole two articles, to wit, a coat from one scholar, and another garment from another scholar at Hallowell's school, and both charged in the same indictment, that it was but one offence; and that the indictment was good, and sentenced the woman to the penitentiary for three years. 6. Because, if all the goods stolen from different persons at the same time may be charged in one indictment; to harass the accused with more is oppressive and against the maxim above quoted, "Nemo bis," &c., and against common justice and common sense.

"That the stealing of goods, at one and the same time, although the property of different persons, is but one act of larceny, and subjects the offender to but one punishment. To make it a distinct larceny for each owner of the stolen goods, is a mere technical rule, totally repugnant to the words and spirit of the penitentiary act, against common sense and common justice, and against the foregoing maxim of the common law, the bill of rights of Maryland, and the constitution of the United States." Again, the judge says: "If a thief contemplates stealing certain goods belonging to different persons, and carries his intent into execution at one and the same time, or, at least, by one continuous operation, it is but one offence, and subject to but one punishment." Again he says: "If

he stole from all of them, with one preconceived intent so to do, at one time, or by one continuous operation, I say, notwithstanding the alleged technical rule above mentioned, it constituted but one larceny." Again the judge says: "I will now proceed to define or expound what I believe to be the true characteristics of a single larceny, and of several larcenies committed by the same person. A single larceny consists in the stealing at one and the same time, or by one continuous operation, all the goods, no matter to whom belonging, which the thief had a preconceived intention of stealing. Take, for example, the case of the traverser, Beerman, who stole sundry articles of clothing from Beerman's boarding-house, from several boarders living at the same house; did he take the goods at one time, or by one continuous operation, in pursuance of a preconceived intention, to take all the said goods? If so, this, I say, is only one larceny. Or did he take part of the goods only at one time, with intent to take those goods only, and finding his theft successful, he, the next day, conceived the intent to take, and did take, the residue; this would be a second and distinct larceny." Again, the judge says: "From the evidence there was but one intention to commit larceny proved." "In the indictments, all the goods stolen were charged to be stolen on the same day, and the law allows of no fractions of a day, unless acts done are proved to have been done at different times on the same day. So far from this, all the goods stolen were, as far as the evidence went, taken at the same time, or by one continuous operation, and in execution of one preconceived intent to steal all the said goods. If so, it was the duty of the court to quash all the indictments except one."

These seem to be the substance of the arguments of the learned judge in his elaborate opinion. By way of illustration, however, he has referred to two or three cases decided by this court. The first case, to which he alludes, is supposed to be that of Esther Gordon, at Alexandria. A woman was indicted for stealing from a closet in Hallowell's Academy, a coat and pantaloons belonging to two of the scholars; and she was charged, in one single count, with stealing both articles at the same time. Each article was of five dollars value or more, so that the stealing of either was a penitentiary offence. It is said that the court sustained the indictment, and sentenced the woman to the penitentiary for three years, and thence it is inferred that the court decided that the stealing of the goods of the two scholars constituted but one offence. The next case alluded to by the judge is supposed to be that of James McDowell, at March term, 1833, who was charged in four indictments; first, for stealing a cloak and hat from F. X. Kennedy, of the value of ten dollars; second, for stealing a small cloak from Henry Hubbard, of the value of two dollars; third, for stealing a hat from W. Wentworth, of the value of six dollars; and, fourth, for stealing a hat from E. L. Childs, of the value of two dollars. The prisoner was convicted upon each indictment, and there having been no motion in arrest of judgment nor demurrer, nor motion to quash any of them, the court (Judge Thruston, dissenting,) proceeded to pass the sentences required by law. Upon the first and third the sentence was two years' imprisonment and labor in the penitentiary in each case; and upon the second and fourth a small fine and simple imprisonment for one month in each case.

In these cases, the evidence is said to have been that the hats and cloaks were stolen out of the hall of F. X. Kennedy, who kept a boarding-house, and were probably all taken at the same time. I was not present at the trial, though I was at the time of passing the sentences. The ground taken by the judge is, in substance, that the stealing of the goods of divers persons, at the same time, constitutes but one offence, and cannot in law be the subject of diverse indictments or prosecutions. This position, I think, cannot be maintained. In Hammon's Case, 2 Leach, 1089, cited in 2 Russ. Crimes, 102, Grose, J., says: "The true meaning of larceny is the felonious taking the property of another, without his consent, and against his will, with intent to convert it to the use of the taker." The gist of the offence is the violation done to the right of property of the injured individual, which it is the duty of the government to protect. The injury done to the right of property of A, is not an injury to the right of property of B. Both are injured, and each has an equal right to call upon the government to punish the offender. Stealing the goods of B, is as much an offence as stealing the goods of A. A man may commit an assault and battery on two persons at the same time, yet the battery of one is not the battery of the other. If the offender should be indicted for the assault upon one of them, and be acquitted, he could not plead his acquittal in bar of an indictment for the assault upon the other. So if the man who stole the several goods of A and of B, should be indicted for stealing the goods of A, and should be acquitted, he could not plead his acquittal in bar of an indictment for stealing the goods of B, although stolen at the same time; because the evidence of stealing the goods of B, would not support the indictment for stealing the goods of A. So if a man, intending to murder A and B, should kill them both at one shot, and should be acquitted upon an indictment for the murder of A, he could not plead that acquittal in bar of an indictment for the murder of B; nor, if convicted of the murder of B, could he plead it in bar of a prosecution for the murder of A. By the common law, the owner of goods stolen, could not, upon conviction of the thief on a prosecution by indictment, ob-

tain restitution of his goods; but was forced to bring an appeal of robbery, in order to have his goods again. 4 Bl. Comm. p. 362, c. 27. But now, by the statute of 21 Hen. VIII., c. 11, it is enacted that if the felon shall be convicted "by reason of the evidence given by the party so robbed, or owner of the said money, goods, or chattels, or by any other by their procurement, then the party so robbed, or the owner. shall be restored to his said money, goods, and chattels." And the justices shall have power, "to award from time to time, writs of restitution," &c., "in like manner as though any such felon were attainted at the suit of the party in appeal." Dalton, in his Justice (chapter 122, p. 346), says: "If a thief do rob or steal goods from three men, severally, and he be indicted for the robbing or stealing from one of them, and arraigned thereupon; in this case, though the other two would give evidence against the offender, yet shall they not have restitution of their goods, by the meaning of that statute" (21 Hen. VIII., c. 11), "for the felon is not attainted of any other felony saving that whereof he was indicted. But if he be indicted of all the three robberies or felonies severally, and arraigned upon one of them, and found guilty by the evidence given by one of the parties robbed," &c., "yet shall he be after arraigned upon the other two indictments, to the intent he may also be guilty by the evidence of the other two persons robbed, and that so they may have restitution of their goods stolen according to the meaning of the said statute. And if a man do steal goods at divers times from several men, and he is after attainted at the suit of one of them only for the goods stolen from him, but is not attainted at the suit of the others; by this attainder the felon shall forfeit to the king, not only his own goods, but also the goods stolen from those others at whose suit he was not attainted, though the felon had not the property, but only the possession of those goods. And the property of the goods which remaineth in the right owner in this case is forfeited (by the owner,) to the king, for the default of the owner pursuing the felon." Here it is evident, that Dalton first speaks of goods stolen from three several persons at one time, and considers them as distinct felonies, and liable to be severally prosecuted by indictment; and that if he be found guilty upon one of them, he may be afterwards arraigned and convicted upon the others. He then speaks of goods stolen "at divers times from several men." That the stealing of the goods of several persons at the same time, constitutes several distinct larcenies, appears to have been repeatedly adjudged in the English courts, and has, I believe, never been denied there, or in this country. Thus in Turner's Case, J. Kel. 30: "One James Turner and William Turner, at Christmas sessions last," (1664,) "were indicted of burglary for breaking the house of Mr. Tryon, in the night, and taking away great sums of money; and thereupon James Turner was found guilty and executed; but William Turner was then acquitted; and now there being great evidence that William Turner was in the same burglary with James Turner, and there being £47 of the money of one Hill, a servant to Mr. Tryon, stolen at the same time, which £47 was not in the former indictment, they would have indicted William Turner again, now, for burglary, for breaking the house of Tryon, and taking thence £47 of the money of Hill. But we all agreed that William Turner, being formerly indicted for burglary, in breaking the house of Mr. Tryon, and stealing his goods, and acquitted, he cannot now be indicted again for the same burglary, for breaking the house; but we all agreed that he might be indicted for felony, for stealing the money of Hill; for they are several felonies; and he was not indicted of the felony before. And so he was indicted. And I afterwards told my Lord Chief Justice Bridgeman what we had done, and he agreed the law to be so as we had directed." The same doctrine is held in Jones' and Bever's Case, J. Kel. 52. "At the jail-delivery in the Old Baily, 19 February, 1665, John Jones and Philip Bever were indicted for burglary, for breaking the king's house at Whitehall, and stealing from thence the goods of my Lord Cornbury, and were found not guilty; and afterwards were indicted for the same burglary and stealing the goods of Mr. Nunnesy; and we agreed that they, being once acquitted for the burglary, could not be again indicted for the same burglary, but might be indicted for stealing the goods of Mr. Nunnesy, according as was formerly resolved in Turner's Case."

These cases, as far as they show that stealing the goods of A, and the goods of B, at the same time, constitutes two distinct felonies, are confirmed by the case of Rex v. Vandercom (in 1796) 2 East, P. C. 519, in which the court overruled the opinion of the judges in the Cases of Turner, and Jones and Bever, so far as they had decided that the breaking and entering of the dwelling-house of Tryon, in the night, and stealing therein the goods of Tryon, and the money of Hill, constituted only one burglary. In this case, (of Vandercom,) "the prisoners were indicted for burglariously breaking and entering the dwelling-house of Merial Nevill and Ann Nevill, &c., with intent to steal their goods therein being; to which they pleaded autrefois acquit upon a former indictment charging the same facts, with this difference, that instead of the breaking, &c., being laid with intent to steal, &c., the indictment charged an actual stealing of certain goods of Merial Nevill, and certain other goods of Ann Nevill, and certain other goods of one Susanna Gibbs; and concluding with an averment of the identity of the persons, and that the two indictments were for the same burglary. The case was argued upon demurrer before all the judges, and they unani-

mously held the plea bad; the grounds of which judgment were afterwards stated by Buller, J., at the Old Baily in June, 1796. He began by observing that, on the part of the prisoners, it was contended that, as the dwelling-house mentioned in the two indictments, and the times, mentioned in each, when the offence was committed, were the same, therefore the offence was the same; and the acquittal on the former indictment a bar to the present. And further, that burglary was defined to be a felonious breaking and entering of a mansion-house in the night-time, to be completed by felony, or an intention to commit it; and that two cases in Kelyng were relied on in support of the plea of autrefois acquit." After stating the two indictments, he proceeded: "The question is, whether the several offences described in the two indictments can be said to be the same? That there was only one act of breaking the house, and a felony committed only at one time, must, on this record, be taken to be clear; but that does not decide the question. The crime of burglary is of two sorts: 1. Breaking and entering a dwelling-house, in the night-time, and stealing goods there. 2. Breaking and entering a dwelling-house, in the night-time, with intent to commit a felony, though that felony be not committed. The circumstance of breaking and entering the dwelling-house, is common and essential to both, but it does not, of itself, constitute the crime in either; for there must be a felony committed, or intended, without one of which the crime of burglary does not exist; and these offences are so distinct in their nature, that evidence of one will not support an indictment for the other. For example, if a man be indicted for breaking and entering a house in the night, and stealing goods there, evidence that he broke, &c., and intended to steal goods, or commit any other felony, would not support the indictment. In the case of the present prisoners, the evidence applicable to the indictment now depending, which is for breaking, &c., with intent to steal, was not evidence to prove the first indictment for breaking, &c., and stealing goods. Then if the crimes are so distinct that evidence of one will not support the other, it is inconsistent with reason to say that they are so far the same that an acquittal of one shall be a bar to a prosecution for the other. Neither do legal authorities support such a proposition." After stating Turner's Case from Kelyng, the judge proceeded: "In that case the judges went on the idea that the breaking the house and the stealing the goods were distinct offences, and that breaking the house only constituted the burglary; which was a manifest mistake. The burglary consisted of breaking the house and stealing the goods; and if the stealing the goods of Hill were a distinct felony from that of stealing the goods of Tryon, (which they admitted to to be,) the burglaries, from necessity, could

not be the same. In that case the fact was, that the prisoner broke the house of Tryon and stole the money both of Tryon and of Hill at the same time. He had been tried for breaking the house and stealing the money of Tryon, and might have been convicted if the prosecutor had used due diligence about his evidence, so that the prisoner's life had been put in jeopardy; but still the judges held that he might be tried for the other part of the same act, namely, stealing the money of Hill." The judge then stated the Case of Jones and Bever, from Kelyng, and said: "But authorities are not wanting to show the principle and foundation on which the plea or autrefois acquit is to be sustained." He then referred to 2 Hawk. P. C. c. 35, § 3; Fost. Crown Law, 361, 362; and Rex v. Pedley, B. R. Tr. 1782. These establish the principle that unless the first indictment were such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second. "To apply that principle to the present case. The first indictment was for breaking and entering the house and stealing the goods. If it were proved, on that indictment, that the prisoners broke and entered the house, but had not stolen the goods, which are the facts contained in the present indictment, they could not have been convicted on that indictment by such evidence. They have not, then, been tried, nor were their lives ever in jeopardy, for this offence, which is for breaking the house with intent to steal the goods. For these reasons the judges are unanimously of opinion, that the plea is bad; that there must be judgment for the crown upon this demurrer, and that the prisoners must take their trial upon the indictment now depending." From these cases it appears to have been the unanimous opinion of at least sixteen judges in England, that the stealing of the goods of two separate owners, at the same time, by the same person, and in the same place, constitutes two separate offences; and that this proposition, or doctrine, which does not appear to have been ever controverted, was so clear as to have been the admitted ground of the judgments of the courts, in these three cases of burglary; and Chitty (volume 1, p. 457), says: "And if two offences are supposed to have been committed at the same time, as if a horse and a saddle are stolen together, an acquittal of one will be no bar to an indictment for the other, for the crimes are essentially different."

This proposition, then, being established beyond all controversy, it follows that these separate offences may be the subject of separate indictments; and there are some reasons why it is not always "repugnant to common sense and common justice," that they should be, sometimes at least, thus prosecuted.

1. A count charging two distinct felonies

would be liable to the objection of duplicity, and might be quashed, either upon motion before trial, or upon demurrer, or on motion in arrest of judgment; and even if charged in separate counts of the same indictment, although it would be no cause for demurrer, nor for arresting the judgment, because each count is to be considered as for a separate offence, and liable to a separate judgment; yet in England the practice of the judges is, if the objection is discovered before plea, to quash the indictment, and if not discovered until the trial, to put the prosecutor to his election for which offence he will proceed. See Starkie, Cr. Pl. c. 2, § 2, p. 42; East, P. C. 515–522; Young v. King, 3 Term R. 106; Leach, 531, 568; Rex v. Jones, 2 Camp. 132; Archb. Cr. Pl. 54, 59, 60; Rex v. Fuller, 1 Bos. & P. 181; Rex v. Galloway, 1 Moody, Crown Cas. 234; Rex v. Flower, 3 Car. & P. 413; Rex v. Madden, 1 Moody, Crown Cas. 277; Com. v. Symonds, 2 Mass. 163, 164; 1 Chitty, Cr. Law, 168, 172, 248. 252a; Thomas's Case, 2 East, P. C. 934; Co. Litt. 304a; Com. v. Dove, 2 Va. Cas. 26. If an indictment charging several distinct offences, be thus liable to be quashed, the prosecutor ought not to be compelled to include them in one indictment, when there never has been a question that they may be indicted separately.

2. To charge the defendant with two distinct felonies in one count, or even in one indictment, may embarrass him as to his challenge of jurors. He might have good cause of challenge as to one of the offences, and not as to the other. If a juror should be found not indifferent as to the trial of one of the offences, and indifferent as to the other, the United States might claim him as a competent juror as to this offence, while the prisoner might insist upon his being rejected as to the former; and if the juror should be rejected, it must be because the prosecuting attorney, by joining the two offences in one indictment, had subjected himself to this inconvenience. He ought not, therefore, to be compelled thus to join them.

3. If the prosecutor is obliged to charge, in one count, all the goods of divers persons stolen at the same time, he may be obliged, against his will, to charge the defendant with a penitentiary offence; for if charged in separate indictments, or even in separate counts, neither of them might be of sufficient value to send him to the penitentiary.

4. The prosecuting attorney may not know how the evidence may turn out, as to the time and manner of taking the goods. They may all have been found in the defendant's possession at the same time, but there may be no evidence that they were all taken at the same time. The attorney of the United States would probably charge them as having been stolen on the same day; but the day laid in the indictment is immaterial, and need not be proved.

If he should not be able to prove that the goods were taken at the same time, then he might be put to elect, for the goods of which owner he would prosecute, and abandon the rest; and then one of the owners only would be entitled to restitution of his goods, for the defendant could be convicted of taking the goods of one only. These are some of the inconveniences of charging separate offences in the same indictment, all of which may be avoided by charging them separately; and as the propriety and legality of joining them may, at least, be questionable, a prudent prosecutor would generally charge them in separate indictments. It is true that Russell (volume 2, p. 178), says: "With respect to those larcenies which are aggravated by the amount of the property stolen, it should appear that the property, the value of which is taken into the computation, was all stolen at the same time." "For, in fact, where things are stolen at different times, they are different acts of stealing, and no number of petit larcenies would amount to grand larceny, nor any number of grand larcenies, where it depended upon the value of the property stolen, to a capital offense. But it seems that if the property of several persons, lying together in one bundle, or chest, upon the same table, or even in the same house, be stolen together at one time, the value of the whole may be put together, for such stealing is one entire felony." And Hale (1 Hale, P. C. p. 530, c. 45,) says: "If two or more be indicted for stealing goods above the value of twelve pence, though in law the felonies are several, yet it is grand larceny in both. 8 E. 2, Coron. 404. But if upon the evidence it appears that A stole twelve pence at one time, and B twelve pence at another time, so that the acts were several, at several times, though they were the goods of the same person, this is petit larceny in each, and not grand larceny in either." And again, in page 531, he says: "But it seems to me, that if, at the same time he steals goods of A, to the value of six pence; goods of B, to the value of six pence, and goods of C, to the value of six pence, being perchance, in one bundle, or upon a table, or in one shop, this is grand larceny, because it is one entire felony, done at the same time, though the persons had several properties; and therefore if in one indictment, they make grand larceny." It is remarkable, however, that neither Hawkins, nor his editors, have noticed this opinion of Lord Hale, although they have cited a preceding opinion which is now exploded, that goods stolen from the same person, at different times, if charged in one indictment, constitute grand larceny, although each parcel stolen at one time was under the value of twelve pence. Again, Hale (2 Hale, P. C. 173), says: "Larcenies committed of several things, though at several times, and from several persons, may be joined in one indictment." This, no doubt, means in several counts, and that the joinder is no ground of demurrer, or of motion in arrest of judgment; and thus it agrees with the other authorities, and

is cited, as law, by Chitty (volume 1, p. 252a), and Chitty (volume 3, p. 959a) has copied from the Crown Circuit Companion, (which, however, is not remarkably accurate in its forms,) the form of an indictment charging, in one count, the stealing of the goods of two separate owners; and Mr. Starkie has transferred the same form to his appendix of precedents. Mr. Chitty (volume 3, p. 959a). in a note says: "Where several persons' goods are taken at the same time, so that the transaction is the same, the indictment may properly include the whole; but not so if the takings were at different times." And Mr. Starkie, in a note to page 440, note d, says: "Where the felonies are completely distinct, they ought not to be joined in the same indictment (see page 44); but where the transaction is the same, as where the property of different persons is taken at the same time, there seems to be no objection to the joinder." It seems, therefore, that whether they may or may not be properly joined in one indictment, depends upon the evidence which may be adduced at the trial; and it is, therefore, impossible for the court to know beforehand, whether they are or are not properly joined; and the prosecuting attorney may be equally ignorant till the cause comes on to trial. The only safe course for him, therefore, in such case, is to charge the offences separately. There never has been a doubt suggested in any book or case which has come to my knowledge during the fifty years that I have been daily conversant with the law, whether they may not be separately indicted. The only doubt has been whether they may be joined.

In the case of Beerman, which has called forth the protest and opinion of our learned brother, there was no evidence to show that the goods were all taken from the several five lodgers, in the same house, at the same time, except that they were found in his possession at the same time. Some of the owners did not miss their goods till they were found in the prisoner's possession. One of the lodgers was sick, and I think kept his room. The prisoner was a lodger in the same house, and must probably have gone into the rooms of the other lodgers, at various successive times when they were absent, so that the probability is that the goods were not all taken at the same time and place. There was no suggestion at the trial, that the goods taken were found by the prisoner in one bundle, or on a table, or in a shop, according to the case put by Lord Hale. The district attorney, therefore, in this case, would not, in the exercise of his discretion, have been justified by the principles of law, nor the practice of courts, and especially by the practice of this court (which will be presently shown,) in joining these five offences in one indictment. But, it is said, that "it was the duty of the court to quash all the indictments except one." I do not know by what law the court had a right to quash good indictments, after conviction by verdict, without the consent of the attorney

for the United States. On the contrary, I apprehend it was the duty of the court, upon the motion of the attorney of the United States, to pronounce the judgment of the law upon each of these convictions. If it was the duty of the court to quash four of the five indictments, who had the right to select them? And which of them shall be reserved for trial? If the selection is to be made before trial and by the court, it might be that the court would select for trial the only one which could not be supported by the evidence; and what would be the effect of quashing the indictments upon the future liability of the prisoner to a new prosecution? Could it be pleaded as a former acquittal? Whether quashed before verdict, or after conviction, it would be equally unavailable as a defence to a subsequent prosecution, for no conviction is a bar unless followed by judgment. See Starkie, Cr. Pl. 364; 2 Hale, P. C. 251; 1 Chitty, Cr. Law, 457, 462. 2 Hale, P. C. 248. And no acquittal is a bar, unless it be "a legal acquittal by judgment, upon trial, by verdict of a petit jury." 1 Chitty, Cr. Law, 457. "There must be not only an acquittal by verdict, but a judgment thereupon quod eat sine die, for the bare verdict of his former acquittal is not a sufficient bar, without a judgment pleaded also." 2 Hale, P. C. 243, 246. The court, after verdict, had no authority to quash any of these indictments, unless for some legal defect appearing in the record, or upon a motion in arrest of judgment; and the judgment should be arrested for some such cause before the court would quash them; and then, perhaps, only upon the motion of the attorney of the United States. If the defendant had been acquitted, by verdict, upon these indictments, the court could not, unless for some legal defect, have quashed the indictments. and thus deprived the defendant of the benefit of his acquittal; and for the same reason, now that the defendant has been convicted upon them, the court cannot, unless for some such legal defect, quash them, and deprive the United States of the benefit of the conviction. Surely such a thing could not be done in a civil cause. If a plaintiff bring several suits upon distinct causes of action, which might have been joined in one declaration, and obtain a verdict in his favor in each suit, it cannot be pretended that the court would have a right to quash all these declarations but one, and thus deprive the plaintiff of the benefit of his verdict, unless for some legal defect in the declarations or pleadings apparent upon the record or shown upon motion in arrest of judgment. Certainly this court has never exercised any such power either in a civil or a criminal case.

I have examined every case of larceny in this country, of which any record remains, from the commencement of this court in 1801 to the present time, and have found it to be the general practice of all the attorneys of the United States to send up to the grand

jury separate indictments for goods stolen from divers persons at the same time by the same person. In the time of Mr. Mason and of Mr. Jones, a period of twenty years, there does not appear to be a single case where the thief is charged, in one indictment, with stealing the goods of divers persons at the same time, while there are, within the same period, eleven cases where goods stolen from divers owners, at the same time, are charged in as many indictments as there were owners of the stolen goods, namely, thirty-six indictments. In Mr. Swann's time, a period of twelve years, there were only three cases, in which goods stolen from divers persons, at one time, by the same person, were charged in one indictment. These were in 1834; but there were, within the same period, thirty-six cases in which separate indictments were found for the stealing of the goods of divers persons, stolen at the same time, making ninety-one indictments in the thirty-six cases. In Mr. Key's time, (a period of five years,) after Judge Thruston, in March term, 1833, (which was the first term after Mr. Key's appointment) had, in the case of James McDowell, publicly censured the practice of sending up separate indictments for stealing the goods of several persons at the same time, Mr. Key sent up indictments, charging in one count the stealing the goods of divers persons in seven cases; namely, against, Layland and Kurtz, severally at November term, 1835, for stealing two cloaks, one belonging to Mr. Martini, worth $30, and the other to Miss Kane, worth $7; against William Kurtz, at November term, 1836, for stealing ninety pieces of silver coin worth $90, of W. R. King, and one handkerchief worth fifty cents. of F. K. Beck; against Wm. Jones. at March term, 1837. for stealing a vest worth $4.50, of George Mullen. and two boots worth $3, of James Fitzgerald; against Wm. Bell and Nicholas Golding severally, at the same term, who were each charged in two separate indictments for stealing the goods of sundry persons on the same day. In one of the indictments they were charged with stealing fifteen bank-notes of $10 each, from Bernard Kelly, and in the other they were charged with stealing goods, worth more than five dollars, belonging to three several persons; this case, therefore. exhibited the practice in both ways; and against Esther Gordon. at Alexandria, in May term, 1836, for stealing a coat worth $10, of D. W. Scott, and a pair of pantaloons worth $5, of W. H. Metcalf. In the mean time, however, that is, from March, 1833,· to March, 1838, inclusive, Mr. Key had sent up separate and distinct indictments for goods stolen at the same time from separate and distinct owners, in twenty-three cases, making sixty-eight indictments. Thus it appears that in the actual practice in this court the proportion of separate indictments to joint indictments, for goods stolen at the same time, is one

hundred and ninety-five to ten. Until about the year 1833, when Mr. Key came into office as district attorney, no objection to this practice had been suggested, it is believed, either here or in England. It had been left to the discretion of the prosecuting attorney to indict for the offences separately, or to join them in one count. In the few cases in which they have been thus joined it may have been doubtful in the mind of the attorney whether he could prove the ownership of all the alleged owners, or it might be very expensive to procure the necessary testimony; or the goods stolen from some of the owners may have been of very trifling value, and therefore he may have thought it prudent not to put the United States to the expense of separate prosecutions; but whatever may have been the motive, the mode of proceeding has been left to the discretion of the district attorney, who is an officer of the United States, and responsible for the proper discharge of the duties of his office. If, then, it be clear, as I think it is, that the stealing of the goods of divers persons at the same time, constitutes several distinct felonies, à fortiori are they to be considered as several and distinct felonies, when the goods are taken at different times, although "taken under a preconceived intention of stealing them, and by a continuous operation." Never having seen such a doctrine as this broached in any law-book which came within my notice, and no authority having been cited in support of it, I cannot believe it necessary to attempt to refute it.

In the opinion of the judge, it is intimated that in the case at Alexandria, where the goods of two of Mr. Hallowell's scholars were stolen at the same time (which was Esther Gordon's case,) this court settled the law that it was but one offence. But it does not appear that any question was made, either by motion to quash the indictment, or by demurrer, or by arrest of judgment; and the court might have been of opinion that the two offences. committed at the same time, might be charged in one indictment. The sentence was for two years' imprisonment and labor in the penitentiary; not three years as supposed by the judge; this however makes no difference in principle. The defendant would have been liable to the same sentence if she had taken only the goods of either of the owners stated in the indictment. Upon the whole, I am clearly of opinion that the stealing of the goods of divers persons at the same time, constitutes as many distinct offences as there are distinct owners of the goods stolen, and that they may be charged in as many separate and distinct indictments. That it is doubtful whether, if all should be charged in one count. the court may not. before trial, quash the indictment, or upon the trial. compel the prosecutor to elect which of the offences he will prosecute. and therefore it is properly left to the discretion of the attorney of the

United States in which mode he will proceed. I am also of opinion that if he prosecutes by separate indictments for each offence, and the defendant is found guilty in all, the court cannot, without the consent of the United States attorney, quash any of the indictments; but on his motion, is bound to render judgment upon the verdicts according to law, unless there should appear upon the record, or upon motion, legal ground to arrest the judgments.